No. 46,581

State of Kansas, *Petitioner*, v. Elmer J. Schumacher, *Attorney Respondent.*

(502 P. 2d 748)

Opinion filed November 4, 1972.

*Curt Schneider*, assistant attorney general, argued the cause, and *Vern Miller*, attorney general, and *Edward G. Collister, Jr.*, assistant attorney general, were with him on the brief for the petitioner.

*Keith Sayler*, of Topeka, argued the cause, and *Elmer J. Schumacher*, also of Topeka, was with him on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline against the respondent, Elmer J. Schumacher, of Topeka, Kansas, in which the State Board of Law Examiners recommended a six month suspension from the practice of law.

The five complaints against the respondent were processed by the State Board of Law Examiners under Rules No. 201 to No. 205 inclusive, adopted by this court May 21, 1968, and revised November 15, 1969. (See 203 Kan. liv to lvii and 205 Kan. lix to lxii.) After investigation and hearings a hearing panel report was filed. The report was adopted by the Board. The respondent took exceptions. The present proceeding in discipline was then filed and docketed as provided in Rule No. 206 (205 Kan. lxii).

The facts surrounding these five complaints were fully investigated. They were set forth as "Findings of Fact" in the report of the hearing panel. The report was received and adopted by the Board of Law Examiners on May 6, 1971. Highly summarized the facts found by the Board are as follows:

COMPLAINT (1) jacqueline d. mckinley

This complaint arose from respondent's employment by Mrs. McKinley to collect child support payments ordered in a divorce action in the state of Colorado. The matter was pending in respondent's office from December, 1969, to December, 1970, before respondent learned an order had previously been entered in Colorado abating all child support payments. Throughout the year this employment was pending there appears to have been a lack of diligence on the part of respondent. Mrs. McKinley complained about the unavailability of her attorney and the absence of progress re-

ports. Although not condoning respondent's lack of diligence, the Board concluded no discipline should be imposed because the $50.00 fee paid by Mrs. McKinley was applied on services subsequently rendered in an adoption proceeding.

COMPLAINT (2) THE LETTERHEAD

The respondent prepared and used a letterhead which contained in the upper left hand corner the legend, "Former Kansas Workmens Compensation Commissioner." The use of this letterhead continued for some time. In at least one instance an objection to the use of such letterhead was made by an opposing counsel. Respondent continued its use. The Board found that respondent's protracted use of the letterhead was a violation of the Code of Professional Responsibility, DR 2-102 (A-4) which prohibits self aggrandizement. (See Rules of the Supreme Court No. 501, 205 Kan. LXXVII.)

COMPLAINT (3) THE BOUNDARY LINE DISPUTE

Respondent represented certain landowners in a boundary line dispute. The dispute gave rise to much animosity between adjoining landowners. Respondent served a purported "Notice by County Surveyor to Landowners" upon opposing parties using the certified mails. It bore the caption of an action in the District Court of Shawnee County. No such action had been filed in the district court. The name of the county surveyor was typed at the bottom of the notice. The county surveyor had not been consulted and had not authorized the issuance of the notice. A second "Amended Notice" had been prepared and sent by respondent. No survey had been requested in the county surveyor's office. The opposing attorney inquired as to the name of the person conducting the survey. The respondent refused to give him any information. The opposing attorney then obtained a restraining order to prevent further abuse of process and to end the harassment of his clients from the serving of unauthorized notices.

The Board concluded that respondent was guilty of abuse of process and that he had engaged in conduct involving misrepresentation and resulting in prejudice to the administration of justice. (Id. DR 1-102 [A-4] and [A-5]; DR 7-102.)

COMPLAINT (4) TAYLOR TORT CLAIM

Respondent accepted employment from a husband for the purpose of collecting from his client's wife on a tort claim. The client had been injured when his wife intentionally ran over him with a car during a marital disagreement. Summary judgment was entered

against respondent's client on the ground the parties were husband and wife when the incident occurred and tort liability did not exist. Respondent filed notice of appeal to this court. At a time when the appeal was subject to dismissal for failure to file a designation of record and statement of points respondent obtained $100.00 from his client as expenses for an appeal. The appeal was declared abandoned in the trial court. The client did not learn of the dismissal of the appeal until he personally inquired of the court some nine months later. The employment had been undertaken on a contingent fee basis.

The Board concluded that respondent's conduct adversely reflected on his fitness to practice law (*Id.* DR 1-102 [A-6]), that he had neglected a legal matter entrusted to him (*Id.* DR 6-101 [A-3]) and that he failed to seek the lawful objectives of his client for which he had been employed (*Id.* DR 7-101 [A-1]).

COMPLAINT (5) COMMUNITY INVESTMENT COMPANY V. WILSON

Respondent represented a defendant against whom a judgment for $276.50 was entered upon a promissory note. Respondent thereafter filed a notice of appeal to the Supreme Court of Kansas. The appeal was dismissed because the amount involved was less than the jurisdictional amount required. Thereafter, the defendant was ordered to appear in the district court on a motion in aid of execution. She did not appear because of the advice of the respondent. Then both the defendant and the respondent were ordered to appear. Neither appeared. Thereafter, respondent filed a motion for an order to vacate the order requiring appearance. He failed to appear and present the same. The court issued a "show cause" order and a bench warrant was issued to assure respondent's presence in court. Sanctions were imposed against the respondent by the trial court. Respondent was ordered to pay the costs of the proceedings and a fee of $100.00. The fee was for the purpose of reimbursing opposing counsel for time needlessly spent in court as a result of sham and frivolous pleadings filed by respondent. Four and a half months later respondent was cited for contempt in failing to pay the costs and the fee. After service of the citation payment was made.

The Board found respondent's conduct was improper in that he had taken such action on behalf of his client when he knew or when it was obvious that such would serve to harass another (*Id.* DR 7-102 [A-1]), in that he knowingly advanced a defense that

was unwarranted under existing law (*Id.* DR 7-102 [A-2]) and in that he appeared in his professional capacity before the district court and intentionally or habitually violated established rules of procedure (*Id.* DR 7-106 [C-7]).

The recommendation of the Board for six months suspension was based on the second, third and fourth complaints. It concluded the trial judge had dealt properly with the fifth complaint and no additional discipline was recommended thereon. Six months suspension from the practice of law was the discipline suggested by the Board to this court.

We need not detail the evidence in the record. We find clear and satisfactory proof of acts by respondent warranting disciplinary action as required in proceedings of this nature. (See *In re Phelps,* 204 Kan. 16, 17, 459 P. 2d 172, cert. den. 397 U. S. 916, 25 L. Ed. 2d 97, 90 S. Ct. 922, and *In re Ratner,* 194 Kan. 362, 399 P. 2d 865.) Accordingly respondent's contention that there was insufficient evidence of the violations is without merit.

Respondent contends that the attorney general conducted an improper investigation of the charges pending against respondent and failed to supply him with a report of the investigation.

The investigation required in this proceeding under Rule No. 204 (*c*), (*d*) and (*f*) was under the supervision of a panel of three members of the State Board of Law Examiners. They were assisted at the hearing by an assistant attorney general as provided for in Rule No. 205 (*g*). A full transcript of this hearing was available to respondent upon request as provided for in Rule No. 206 (*d*). Any prior investigation by the investigator or by the assistant attorney general was for their own purposes in verifying the facts and preparing for the panel hearing. The respondent was given copies of the complaints well in advance and was afforded a full opportunity to defend against them at the panel hearing. Respondent was present and took part in that hearing. Subsequent thereto he filed supplemental affidavits. These were considered by the board and appear in the record. We fail to see how respondent was prejudiced from a lack of communication with the attorney general's office. The rules of this court relating to the investigation, hearing and notice were complied with.

Respondent next contends the use of the letterhead containing the legend, "Former Kansas Workmens Compensation Commis-

sioner", is recognized and permitted by Rule No. 501 of this court under DR 2-102 (A-2).

DR 2-102 (A-2) reads:

"A brief professional announcement card stating new or changed associations or addresses, change of firm name, or similar matters pertaining to the professional office of a lawyer or law firm, which may be mailed to lawyers, clients, former clients, personal friends, and relatives. It shall not state biographical data except to the extent reasonably necessary to identify the lawyer or to explain the change in his association, but it may state the immediate past position of the lawyer. It may give the names and dates of predecessor firms in a continuing line of succession. It shall not state the nature of the practice, except as permitted under DR 2-105."

It is apparent the respondent is confused in this regard. The rule refers only to professional announcement cards which may be mailed once to a limited circle of personal friends and professional acquaintances. It does not relate to the form of a letterhead.

It has become commonplace for many lawyers to participate in government service. It is proper for a member of the profession to explain his absence from private practice, where such is the primary purpose of the announcement, by a brief and dignified reference to the prior employment. Any such announcement should be limited to the immediate past connection of the lawyer with the government, and be made upon his leaving that position to enter the private practice. (See American Bar Association Opinion 301 [1961].)

DR 2-102 (A-4) is the rule which applies to the form of letterheads. The pertinent part of that rule reads:

"A letterhead of a lawyer identifying him by name and as a lawyer, and giving his addresses, telephone numbers, the name of his law firm, associates and any information permitted under DR 2-105. A letterhead of a law firm may also give the names of members and associates, and names and dates relating to deceased and retired members. . . ."

A lawyer should not hold himself out publicly as a specialist or as limiting his practice. Under DR 2-105 when a lawyer is admitted to practice before the United States Patent Office he may use the designation of patent or trademark attorney. The only other exception is when he is actively engaged in the admiralty practice, and in that case the use of the term admiralty lawyer or attorney on his letterheads is permitted. (*Id.* DR 2-105 [A-1].) Respondent's listing of his former position on the letterhead is not permissible.

Respondent finally contends that since the "Boundary Line Dispute" was later litigated in court the Board was without jurisdiction to usurp the role and function of the trial court.

No authority is cited by the respondent to support this conclusion. The case in the trial court was between the party litigants over a boundary line. The complaint on which disciplinary action was taken involved out-of-court acts by the respondent prior to litigation. These are separate and distinct matters.

The power to disbar or discipline attorneys for causes arising after their admission to practice in this state rests inherently and exclusively in the Supreme Court of Kansas. (*In re Phelps*, supra; *State v. Barrett*, 207 Kan. 178, 483 P. 2d 1106.) This inherent power was recognized and underscored by the legislature in K. S. A. 7-111 as amended. The State Board of Law Examiners was created and empowered to assist the court in such matters. (*Id.* Rule No. 201 [a].) There is no merit to respondent's contention that the Board was without jurisdiction to entertain these disciplinary proceedings.

There remains only the question of the severity of the discipline to administer. After carefully reviewing the facts surrounding the five complaints this court feels, that although more severe discipline might be justified, the recommendations of the State Board of Law Examiners should be accepted.

In handling the boundary line dispute respondent engaged in conduct involving misrepresentation and abuse of process which tends to prejudice the administration of justice. His handling of the Taylor tort claim reflected adversely on his fitness to practice law in that he neglected a legal matter entrusted to him and failed to seek the lawful objectives of his client for which he had been employed. The improper use of the letterhead constituted self aggrandizement. Respondent's actions in the Wilson matter evidenced attitudes of the respondent which were even more serious in nature, although no discipline was recommended by the Board and none is imposed by reason thereof.

Accordingly Elmer J. Schumacher is suspended from the practice of law for a period of six months from the date this opinion is filed.

IT IS SO ORDERED.

OWSLEY and PRAGER, JJ., not participating.