No. 47,464

State of Kansas, *Petitioner,* v. Thomas R. Martindale, *Respondent.*

(527 P. 2d 703)

Opinion filed November 2, 1974. Public Censure.

*Michael C. Cavell,* Special Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, and *Curt T. Schneider,* Assistant Attorney General, were with him on the brief for the petitioner.

*Eugene T. Hackler,* of Olathe, argued the cause, and *Randolph G. Austin,* of Olathe, was with him on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline against the respondent, Thomas R. Martindale, a member of the bar of this state, practicing in Johnson county. The State Board of Law Examiners recommended indefinite suspension from the practice of law. Respondent filed his exceptions to the report of the board and the matter is here for action by this court. The recommendation of the State Board of Law Examiners was based upon three complaints filed against the respondent. We will summarize two of the complaints and the testimony relating to each of them. The third complaint has been carefully considered by the court and we have concluded that the charges contained therein are not supported by clear, convincing and satisfactory evidence.

We turn now to the two complaints where the evidence is undisputed.

I. Complaint of Genevieve Yeamans

This complaint was filed August 8, 1972, with the Johnson County Bar Association. The complainant, Genevieve Yeamans, had been divorced in 1956 and in 1967 contacted respondent regarding the collection of past due child support. She paid respondent a fee of $100 for his services. The respondent prepared a citation in contempt and appeared before the district court in Johnson county in October of 1968. Opposing counsel raised a question of the statute of limitation and the respondent sensing defeat on that issue moved for a continuance of the contempt hearing. The motion was granted. Respondent took no further action to collect child support on behalf of his client. Mrs. Yeamans testified that she had not seen or heard from respondent

since the court appearance in October of 1968. She called both the office and home of respondent and left word for him to return her call. He never called her back and she never received a letter from him. Mrs. Yeamans' daughter also wrote the respondent requesting information and received no reply. Mr. Martindale admitted that he was employed to represent Mrs. Yeamans in the matter and that he had done nothing further in the case since the citation in contempt was continued. He had no recollection of having received either telephone calls or letters but it is possible that she did call and he did not receive the message. He further testified that he has not withdrawn from the case but believes that the Johnson County Legal Aid may have taken over the matter. The respondent agrees that he should have written Mrs. Yeamans and explained to her that nothing further could be done in the case. In its essence the complaint of Mrs. Yeamans charges the respondent with the neglect of her legal affairs. The State Board of Law Examiners concluded that the respondent had neglected a legal matter entrusted to him in violation of DR 6-101 (A) (3) and that he had further failed to carry out a contract of employment entered into with a client for professional services in violation of DR 7-101 (A) (2).

## II. Complaint of the Honorable Harold R. Riggs

This complaint was made to the State Board of Law Examiners on November 9, 1972, by the Honorable Harold R. Riggs of the Johnson County District Court. The factual circumstances from which the complaint arose are not disputed. The alleged misconduct stems from a criminal proceding brought against one Charles Hall for whom the respondent Martindale was serving as defense counsel. The information charged aggravated battery. The two prosecuting witnesses were Wesley M. Dowdy and Dick R. Maynard, both residents of Lee's Summit, Missouri. They both appeared at the preliminary hearing without subpoena and testified against Hall. The case was set for trial to a jury before Judge Riggs in the district court at Olathe to begin on March 20, 1972. Since the county attorney believed that it would not be necessary, subpoenas were not issued for Dowdy and Maynard advising them to be present in court on the morning of March 20 for the trial of the action. Later subpoenas were issued and placed in the hands of a deputy sheriff to be served on the witnesses upon their arrival at the courthouse. On the morning of March 20, 1972, the case

was called for trial and Dowdy and Maynard did not appear. A jury was selected, and the county attorney made his opening statement. At this point the state obtained a recess until that afternoon at 1:15 p. m. over objection of respondent as defense counsel. During the recess at about noon on March 20 Dowdy and Maynard entered the courthouse and went to the second floor. They met respondent Martindale on the steps and visited with him. What transpired then is found in the transcript of the district court proceedings and is undisputed:

" 'Q. And what did Mr. Martindale say to you?

" 'A. We approached him and asked him if we had to show up, if there was any way of us being charged with contempt of court, and asked him if we had to show up and which he replied "no", and we asked him if he was sure we didn't even have to come and he said "yes, he was sure we didn't."

" 'Q. All right, what else was said?

" 'A. And then he just reminded me again that Charles was going to prison if we testified.

" 'Q. Did Mr. Martindale tell you that you should come up and present yourselves?

" 'A. No sir.

" 'Q. Did he tell you that he was an officer of the court and that he thought you should come up?

" 'A. No sir.

" 'Q. Were you planning to come up and testify until you saw Mr. Martindale?

" 'A. Yes sir.

" 'Q. And was Mr. Dowdy planning to come up and testify?

" 'A. Yes sir.

" 'Q. Did you know that the court and jury and everybody was waiting for you and Mr. Dowdy to appear?

" 'A. Yes sir.

" 'Q. Did Mr. Martindale ever indicate to you that they were waiting and that you should rush on up there—that you were holding up proceedings?

" 'A. No sir.' "

Respondent's testimony as to the conversation is substantially the same. At 1:15 p. m. on March 20 the trial was reconvened and the county attorney, who had no knowledge of the conversation just set forth, advised Judge Riggs that the two witnesses had not shown up but that he had been in communication with the mother of one of the witnesses and had been advised that the witnesses were on their way. The court granted another continuance until the following day. During the night of March 20 one of the deputy county attorneys contacted the two missing witnesses and learned that they had come to the courthouse at Olathe and had a conversation with respondent Martindale. The respondent testi-

fied at the hearing that he knew that the state of Kansas intended to use these two men as witnesses and that the state had asked for a delay until the witnesses appeared. He further testified that he objected to these delays and that he met the two witnesses in the courthouse a few minutes thereafter. It is undisputed in the evidence that when the hearing was resumed at 1:15 p. m. the respondent did not advise the judge or the prosecutor that he had visited with the two witnesses. At this hearing respondent moved again for dismissal of the case. He felt that he had no obligation to tell the court that the two men were present in the courthouse and about their conversation. The board in its findings found that respondent did not know subpoenas had been issued for the two witnesses; that he made no effort on his own to contact the witnesses; that he had paid no money to the witnesses to absent themselves; that he made no request of the witnesses to leave the courthouse and that the two witnesses met Martindale on the courthouse steps purely by accident. On these facts the State Board of Law Examiners found that respondent had violated DR 1-102 (A) (5) by engaging in conduct which is prejudicial to the administration of justice and found that he was guilty of violating DR 7-109 (B) which provides that a lawyer shall not advise or cause a person to secrete himself or leave the jurisdiction of a tribunal for the purpose of making him unavailable as a witness therein. Based upon the three complaints that were considered by the board, the Board of Law Examiners recommended that respondent be disciplined by indefinite suspension of his right and privilege to practice law.

With respect to the Riggs' complaint the respondent maintains that he did not advise or cause the witnesses to secrete themselves or leave the jurisdiction of the court and that he truthfully and correctly answered the questions which the witnesses addressed to him. Counsel for the state takes the position that by his comments respondent indirectly caused them to leave the courthouse and furthermore that respondent was duty bound to inform the judge of his meeting and conversation with Dowdy and Maynard when the trial resumed at 1:15.

In his brief the respondent raises procedural issues. He complains that the Yeamans complaint involved an instance which took place in October of 1968 and that no complaint was made until August 8, 1972, nearly four years later. He contends that the

Code of Professional Responsibility did not become effective until July 1, 1970, and cannot be applied to his actions in 1968. We do not agree that the effective date of the code is of significance here. The neglect of legal matters has long been a basis for disciplinary action, even before the adoption of the code. (*State v. Schumacher*, 210 Kan. 377, 502 P. 2d 748.) Furthermore neglect and the failure to adequately complete a professional employment contract are continuing breaches of professional responsibility. It is clear in the present case that the neglect here occurred both prior and subsequent to the adoption of the Code of Professional Responsibility.

With regard to the Riggs' complaint the respondent raises a two-pronged attack complaining that he was denied due process of law. He attacks DR 1-102 (A) (5) as unconstitutionally vague. This disciplinary rule was upheld under that constitutional attack in *State v. Nelson*, 210 Kan. 637, 504 P. 2d 211. Respondent further argues that he was denied adequate notice of the charges against him. This issue was raised and determined adversely to respondent's position in *State v. Alvey*, 215 Kan. 460, 524 P. 2d 747. We see no reason to repeat the conclusions and legal principles stated in those opinions. We find no merit in these contentions.

We have carefully examined the evidentiary record and find that clear, convincing and satisfactory proof of acts of respondent warranting disciplinary action has been presented under the first two complaints. The evidence in support of the Yeamans complaint clearly shows that the respondent neglected a legal matter entrusted to him in violation of DR 6-101 (A) (3) and furthermore that he failed to carry out a contract of employment in violation of DR 7-101 (A) (2).

The evidence presented under the Riggs' complaint in our judgment clearly establishes that the respondent engaged in conduct prejudicial to the administration of justice under DR 1-102 (A) (5). We cannot, however, find that the evidence sustains a violation of DR 7-109 (B) which declares that a lawyer shall not advise or cause a person to secrete himself or leave the jurisdiction of a tribunal for the purposes of making him unavailable as a witness therein. It is clear from the evidence and findings of the Board of Law Examiners that the meeting between respondent and the witnesses, Dowdy and Maynard, was purely accidental and at the time of the conversation, respondent did not know that subpoenas had

been issued for them. The respondent made no request of the witnesses to leave the courthouse or absent themselves and based upon the knowledge which he had at the time, we cannot say that he answered their questions untruthfully. We find, however, that beyond question respondent knew these two witnesses were needed by the state and that the trial court had recessed the trial until they appeared. We find without hesitancy that as an officer of the court it was the respondent's duty to report to the court and to opposing counsel that the witnesses had been present in the courthouse and his conversation with those witnesses. In our judgment this was conduct prejudicial to the administration of justice which is proscribed by DR 1-102 (A) (5).

The duties of a lawyer under similar circumstances are discussed in *In re Cox*, 164 Kan. 160, 188 P. 2d 652, where we stated as follows:

"The right to practice law is a privilege or franchise subject to the control of the legislature. While functioning by virtue of such privilege a lawyer is a quasi-public official. . . . While he does not hold an office or public trust in the constitutional or statutory sense of that term he is nevertheless an officer of the court and as such has an obligation to the public no less significant than his obligation to his client. . . . His privilege to engage in the practice of law in the courts carries with it a duty to assist in the administration of justice. He is a part of the machinery provided by government in the performance of its functions in administering justice. . . . To the extent he fails to perform that duty he undermines and endangers the true purpose and functions of government." (p. 167.)

Simply stated, courts must be able to rely upon what lawyers say—what they represent as to the facts or the law. Courts must also rely upon what lawyers do not say, for silence, when there is a duty to speak, may mislead the court and prejudice the administration of justice in the same way as a misleading, expressed statement.

The respondent complains that the board's recommendation of discipline by indefinite suspension for all charges was unreasonably harsh. We can see that based upon the three complaints such disciplinary action might well have been justified. As pointed out above, however, we have concluded that the third complaint has not been proven by clear, convincing and satisfactory evidence. On the facts this case is not as aggravated as the factual circumstances shown in *In re Cox*, supra. There the attorney Cox actively participated in concealing the whereabouts of a child and subsequently misinformed the court as to the child's whereabouts. In

*Cox* the attorney's privilege to engage in the practice of law was suspended and he was disbarred. A minority of the court are of the opinion that indefinite suspension is an appropriate discipline to be imposed in this case. The majority of the court, however, after careful consideration of all the facts and circumstances set forth in the record, are of the opinion that the discipline of public censure is more appropriate for the respondent's acts of misconduct than indefinite suspension.

It is therefore by the court considered, ordered and adjudged that Thomas R. Martindale be and is hereby censured by this court. The cost of this proceeding is taxed against the respondent and shall be paid forthwith.