No. 49,013

STATE OF KANSAS, *Petitioner,* v. U. M. HOOVER, *Respondent.*

Opinion filed January 21, 1978. ▮▮▮▮▮▮▮▮

*Philip A. Harley,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the petitioner.

*Eugene T. Hackler,* of Hackler, Londerholm, Speer, Vader, and Austin, Chartered, of Olathe; argued the cause, and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline against the respondent U. M. Hoover, a member of the bar of the state, practicing in Johnson county. The State Board of Law Examiners recommended indefinite suspension from the practice of law. Respondent filed his exceptions to the report of the board and the matter is here for determination by this court. The recommendation of the state board was based upon a single complaint filed against the respondent.

The complaint is dated January 26, 1976. The complainant is John T. Flannagan, a member of the bar, also practicing in Johnson county. The facts giving rise to this proceeding are not greatly in dispute and essentially are as follows: In 1972 Frank C. Gee, an elderly man of 87 years, was living in a nursing home in Johnson county. For a number of years Gee had been looked after by his long-time friend, Arthur L. Jones. Jones, a lawyer, was also Gee's voluntary conservator. Down through the years Jones had drafted a number of wills at Gee's request. The last will drafted by Jones was executed by Gee in October of 1972. One of the principal beneficiaries of that will was E. C. Peterson, a long-time friend of Gee. During 1972 Gee was treated kindly by a lady named Dubell, who worked as a practical nurse in the nursing home. Mrs. Dubell and her daughter, Gayla McCormick, became quite friendly with Gee and assisted him in moving to another nursing home. Apparently Gee responded to their care and attention with feelings of affection and generosity. Gee made his Montgomery Ward charge plate available to them and the ladies made some personal purchases without authority from the conservator. It would appear from the record that the ladies were not familiar with the conservatorship or the status of Gee thereunder. When Jones got wind of Gee's attachment to the two ladies and their use of Gee's charge plate, he became concerned that the two ladies were taking advantage of Gee. Jones then filed a petition on

behalf of Gee to have himself, Jones, appointed as mandatory conservator of Gee. Apparently this action was taken with the knowledge and support of E. C. Peterson.

Gee took umbrage at the suggestion that he needed a mandatory conservator to protect himself from his own generosity. The relationship between Gee and his old friends, Arthur Jones and Peterson, became strained. The record indicates that, following the filing of the petition by Jones, Gee got in contact with the respondent, U. M. Hoover, and Hoover at Gee's request petitioned the probate court to have Hoover appointed as Gee's voluntary conservator. This caused Arthur L. Jones and his attorney, John Flannagan, to become suspicious that Hoover was working with the two ladies who were allegedly exerting influence on Gee. The petition filed by Jones to have himself appointed mandatory conservator and the petition filed by Hoover to have the court appoint himself as voluntary conservator were consolidated for trial. A hearing on the two petitions was set before Judge Benjamin F. Farney of the probate court of Johnson county on March 26, 1973. The complaint filed in this case was the outgrowth of the events that transpired at the hearing before Judge Farney.

The basic issue for determination at the hearing on March 26, 1973, was whether or not a mandatory conservator should be appointed for Frank Gee. Judge Farney's personal notes taken at the hearing indicate that several witnesses were called to testify. E. C. Peterson testified that he had known Gee since 1950 and that they had been very good friends. He tried to look after Gee, after Mr. Gee's wife died. Gee developed physical problems as time passed. In March of 1972 Peterson dropped in to see Gee at his home and found Gee lying on the floor in the bathroom. Gee did not want to go to the hospital, so Peterson called Arthur Jones and they were able to persuade Gee to go to the Homesdale Nursing Home. Thereafter, Peterson continued to see Gee two or three times a week. Gee's physical problems began getting worse. His mental condition varied—sometimes being as good as ever and at other times not so good. Then Gee became dissatisfied with his treatment at Homesdale and with the help of the ladies moved to the Four Seasons Nursing Home. After that, Peterson's relationship with Gee was not as friendly. Peterson learned that Gee had given his credit card to Mrs. Dubell. When Peterson became

concerned about certain bills from use of the credit card, he went to see Arthur L. Jones. Peterson testified that Gee's health problems were primarily physical and not mental—that Gee had forgetfulness and a lack of clear thinking. It was Peterson's opinion that Gee, at the time of the hearing, was mentally capable of making his decisions, but was physically unable to take care of himself or his property.

Arthur L. Jones next took the stand and testified that he had known Gee since before 1935, had represented him, and they had been friends for many years. Jones had counseled Gee about financial matters. Jones had written four wills for Gee, the last will being written when Mr. Gee was at the Four Seasons Nursing Home in October of 1972. As to the purchases made by the two ladies on Gee's credit card, Gee wanted them paid. Jones did not believe that they could properly be paid by a conservator. Jones was particularly upset about certain unpainted furniture which was purchased and which was not placed in Gee's room. One day an attorney, John Lyons, came to the nursing home and asked for Gee. Lyons stated he was there to draw Gee's will. Gee told Lyons that he had not called Lyons, and that Jones was his attorney and would take care of him. Lyons then left. Jones asked the court to appoint a new conservator for Gee.

The next witness was Frank C. Gee. He remembered conversations with attorneys and others but had not tried to remember what was said as he had his mind made up. He testified that Hoover had the papers prepared to have Hoover appointed to handle his business and that Gee had signed them. Gee stated that he had a general idea of what he owned but he is not accurate. Gee gave his credit cards to Mrs. McCormick and her mother, Mrs. Dubell, and authorized them to buy things, clothing specifically. He stated that he wanted to change his will and give Mrs. Dubell some money. There is evidence that at the hearing on March 26, Gee was asked if he had executed a new will and Gee indicated that he had not.

According to Judge Farney's notes the last witness who took the stand on March 26 was Gayla McCormick, the daughter of Mrs. Dubell. She testified that she and her mother met Gee in August of 1972. She knew of John Lyons but didn't know who contacted him. When the purchases were made at Ward's and Penney's, she did not know the "full status" of Gee's legal

position. At that time she was in the process of paying for the purchases herself. She testified that she worked for Gee, took him for rides, washed his clothes, etc. She did not know "if Gee is going to give her anything but that he wants to." It is possible that her mother may have contacted Mr. Hoover. Following the testimony of Gayla McCormick, the hearing was continued to March 30, 1973.

At the hearing of March 30 the only witness was the respondent U. M. Hoover. No transcribed record was taken of the testimony by a reporter on either March 26 or March 30. According to Judge Farney's notes, Hoover testified that Gee had telephoned him at his office and that in response to the call he went to see Gee several days later. According to Farney's notes, Hoover testified that no new will had been executed, but one had been "worked on." There are some minor discrepancies in the testimony as to the exact question which Flannagan asked Hoover at this hearing on March 30, 1973. We consider the record undisputed, however, that Flannagan asked Hoover if he had made a new will for Mr. Gee and that Hoover in substance answered that he had not made a new will but had worked on one or was working on one. This testimony by Hoover concluded the evidence. At the close of the hearing Judge Farney appointed the respondent Hoover as voluntary conservator for Frank C. Gee. Thereafter, some brief discussion was apparently held in Judge Farney's chambers, but the evidence does not establish clearly what the discussion was. Thereafter Flannagan prepared a journal entry on the hearing which included a finding by Judge Farney that Mr. Gee was mentally incapacitated. Hoover objected to that portion of the journal entry and asked Judge Farney to delete the finding. A hearing was held to settle the journal entry and Judge Farney directed that Flannagan delete the finding.

Frank C. Gee died about 13 months later. A will which had been prepared by U. M. Hoover and signed by Frank C. Gee on March 15, 1973, was offered for probate by Hoover. That will was subsequently admitted to probate. The will devised $500 to E. C. Peterson and other property to Mrs. Dubell and her daughter, Gayla McCormick. Prior to Gee's death, Arthur Jones and John Flannagan had no knowledge that Hoover had prepared the will which Gee had signed on March 15, 1973. It is clear that Flannagan and Jones were of the opinion that the respondent Hoover

had misstated the true facts to the court at the hearing on March 30, 1973, when Hoover testified that he had not made a new will but had worked on one. The appearance of the March 15th will prompted the filing of the complaint in this case with the disciplinary administrator. The complaint was set for hearing before a hearing panel. At this hearing, the factual circumstances stated above were brought out by the testimony of Flannagan, Jones, Hoover, and Judge Farney. U. M. Hoover testified that at the hearing on March 30, 1973, he, Hoover, was asked by John Flannagan whether or not Hoover had "made a new will" for Mr. Gee and that Hoover replied, "No, but he was working on one or had worked on one." Hoover further testified that he had prepared the will which Gee signed on March 15, 1973, and that after that will was executed Gee requested Hoover to prepare a *new* will disinheriting E. C. Peterson, who was to receive $500 in the will of March 15, 1973. Hoover stated that he told Gee, "Let's wait a few days and maybe you will feel better about it." Hoover testified that, thereafter, Gee dropped the matter about a new will and no further will was executed. According to Hoover, he understood the term "new will" as used in Flannagan's question to mean the proposed new will which would disinherit Peterson, which Gee suggested after the execution of the will on March 15, 1973. Simply stated, it is Hoover's position that the question as to his preparation of a "new will" was ambiguous and that he answered the question truthfully as he understood it.

At the hearing before the panel Hoover also presented the testimony of Dr. G. O. Proud, a hearing specialist, who testified that Hoover had difficulty in hearing. An attorney, K. B. Wallace, testified that he had known Hoover since 1937 and that Hoover's reputation for truth and veracity was good. Hoover also called other witnesses who testified as to his good reputation and character. Hoover himself testified that he had passed the bar in 1940, and after serving on active duty in World War II, returned to Johnson county; that for a number of years he was a claims representative for an insurance company; that he had served as judge of the police court at Merriam, Kansas; that he had been active in service clubs in Johnson county, and had served on the Johnson County Drug Abuse Council. Hoover stated that at the time of the hearing he was practicing law as a single practitioner and that in 36 years of law practice he had not had a single

complaint filed against him by either a state or local ethics committee, other than this complaint.

With the evidence in this posture, the matter was submitted and determined by the hearing panel. The panel found that respondent had not truthfully answered the question asked of him about his making of a will for Frank Gee and thereby had misled the court and withheld the truth by his testimony. The panel's report recommended that Hoover be disciplined by indefinite suspension from the practice of law and that the costs be taxed to him. The report of the hearing panel was submitted to the entire Board of Law Examiners who adopted the same, including the recommended discipline. The respondent then filed exceptions to the report, findings, and recommendations of the board, and the proceedings were docketed for hearing in this court.

In his brief the respondent lists a number of procedural complaints. He contends that the panel improperly considered certain documents relating to a previous hearing before the Johnson county grievance committee and certain other evidence, after the chairman of the hearing panel had ruled the evidence inadmissible. We have examined the record and find no indication that the excluded evidence was in any way relied upon by the panel or board in reaching their decisions. In determining the matter in this court, we have not considered any evidence or exhibits which were excluded by the hearing panel. We find this contention to be without merit.

Respondent next complains that his motion to dismiss at the beginning of the proceeding should have been sustained for the reason that the complaint did not inform respondent clearly and specifically of the disciplinary rules violated, and that the copy of the complaint which he received was so wholly inadequate as to deny him due process of law. In our judgment the complaint was sufficient since it set out with particularity the basic factual situation out of which the charge arose. This is all that is required by our decision in *State v. Alvey,* 215 Kan. 460, 524 P.2d 747. The letter from Mr. Flannagan, constituting the complaint in the case, states in detail the acts complained of with specificity as to time and place. We further find that the copy of the complaint received by respondent's attorney was sufficient to advise him as to the nature of the charges. Respondent also contends that the decision of the hearing panel itself was reached in an improper manner.

We find no basis for this contention.

We turn now to a consideration of the case on its merits. We are obligated to follow our former Rule No. 207(*l*). To warrant a finding of misconduct, the charges must be established by substantial, clear, convincing, and satisfactory evidence. Considering all of the evidence in the case, we have no hesitancy in holding that the evidence establishes professional misconduct on the part of the respondent. In this regard it should be emphasized that the testimony of respondent Hoover on March 30 must be considered in the light of the testimony of other witnesses presented to the probate court on March 26, 1973. At that hearing Arthur Jones testified that down through the years he had prepared a series of wills for Gee and that the *last* one had been prepared in October 1972 at a time when Gee was at the Four Seasons Nursing Home. When Frank Gee took the stand on March 26 he testified that he had not executed a new will but wanted to give Mrs. Dubell something in the future. Respondent Hoover was present at this hearing and heard this testimony. Hoover at that time must have known that this testimony by Gee was not correct. In our judgment he had a duty at that time to correct the testimony of his client by advising the court that he, Hoover, had in fact prepared a will for Gee and that Gee had signed it. This evidence clearly established that the respondent in violation of DR 7-102(3) concealed or knowingly failed to disclose information which he was required by law to reveal to the court. (*State v. Martindale*, 215 Kan. 667, 527 P.2d 703.)

Taking the record as a whole, we cannot find by clear, convincing, and satisfactory evidence that the respondent Hoover willfully made false statements of fact to the court. Unfortunately, there was no transcribed record of the respondent's testimony before Judge Farney on March 30, 1973. As pointed out above it seems clear that John Flannagan asked the respondent if he had made a *new* will for Mr. Gee. It cannot be denied that the question was somewhat ambiguous. Giving respondent the benefit of the doubt, it is entirely possible that the respondent misconstrued the question by having in mind "the new will" which Gee wanted Hoover to prepare following the execution of the will on March 15, 1973. Such a conclusion is supported by the fact that the respondent in answering the question advised the court that he had worked or was working on a new will. This

answer should have alerted opposing counsel and the trial judge so that they might have asked more specific questions had they desired to do so. The respondent's answer to the question indicates to us that the respondent did not willfully and intentionally make a false statement of fact to the court.

On the facts, this case is not as aggravated as the factual circumstances show in *In re Cox,* 164 Kan. 160, 188 P.2d 652. There the attorney Cox actively participated in concealing the whereabouts of a child and subsequently misinformed the court as to the child's whereabouts. In *Cox* the attorney's privilege to engage in the practice of law was suspended and he was disbarred. A minority of the court are of the opinion that indefinite suspension is an appropriate discipline to be imposed in this case. The majority of the court, however, after careful consideration of all the facts and circumstances set forth in the record, are of the opinion that the discipline of public censure is more appropriate for the respondent's misconduct than is indefinite suspension.

It is therefore by the court considered, ordered, and adjudged that U. M. Hoover be and he is hereby censured by this court. The cost of this proceeding is taxed against the respondent and shall be paid forthwith.