No. 47,869

STATE OF KANSAS, *Petitioner*, v. LEO N. JOHNSON, *Respondent*.

(546 P. 2d 1320)

Opinion filed March 6, 1976. Public Censure.

*Phil Harley,* assistant attorney general, argued for the petitioner.
*Leo N. Johnson* argued pro se.
*Walter E. Hembrow,* Council Grove, also argued for the respondent.

*Per Curiam:* An original proceeding in discipline has been filed on two complaints against the respondent, Leo N. Johnson, a lawyer practicing at Council Grove, Kansas.

A hearing on these complaints was previously conducted before a duly constituted hearing panel. The hearing panel filed a report with the State Board of Law Examiners (State Board) setting forth its findings of fact and recommendation of discipline. The State Board considered the complaints and the report of the hearing panel. It adopted the findings of fact and the recommendation of public censure contained in the report of the panel. Thereafter, the respondent notified the State Board that he accepted the findings of fact but took exception to the severity of the discipline recommended. Thereupon the proceeding was filed in this court for final decision. We will summarize the two complaints and the testimony relating to each of them.

## I. Complaint of Rolland G. Jones

This complaint was filed by a forwarding attorney, Rolland G. Jones of Flandreau, South Dakota. Mr. Jones had obtained a judgment in favor of Dr. B. T. Otey in Flandreau, South Dakota, against Charles Bowen in the amount of $908.94 with interest. Mr. Bowen subsequently moved to Kansas and was residing in Council Grove at the time the respondent accepted this collection. Respondent was unable to locate Mr. Bowen at first and six weeks passed before he acknowledged the forwarding attorney's letters. Mr. Bowen was finally located and respondent advised the forwarding attorney that Mr. Bowen was an unemployed carpenter with nine children and a sick wife and that he was receiving welfare assistance at this time. Three months went by without further correspondence. Then the forwarding attorney wrote two letters, one month apart, requesting a further report. The respondent responded and advised

Mr. Jones that Mr. Bowen was still receiving welfare assistance and that he doubted if the account could be collected. The forwarding attorney Jones wrote three letters, one month apart, two to the respondent requesting a further report and one to the Grievance Committee of the Kansas Bar Association. Thereafter respondent advised the forwarding attorney of his unwillingness to proceed further on a contingent fee basis and suggested that the account was barred by the statute of limitations. The judgment in South Dakota had been obtained in November, 1960, and respondent's letter was written in October, 1970. Attorney Jones wrote back that a judgment had been obtained in March, 1961, in Shawnee County, Kansas. There is nothing in the record to indicate whether this judgment has been kept alive or has become dormant. (See K. S. A. 60-2403.)

Between January, 1971, and June 3, 1974, when respondent was discharged by the forwarding attorney, respondent received nineteen letters from Mr. Jones and two letters from the Kansas Bar Association Grievance Committee. During this period respondent wrote Mr. Jones five times but failed to respond to the grievance committee. During this same period respondent remitted four payments of $10.00 each collected from Mr. Bowen.

At the hearing respondent frankly admitted his failure to communicate with Mr. Jones and the grievance committee. He stated he should have withdrawn from the case at an early date in view of the limited probability of collecting any substantial portion of the amount owing.

The conclusion adopted by the State Board on this complaint was that there had been a violation by respondent of the Code of Professional Responsibility, Rule No. 501, Canon 1, DR 1-102 (A) (6) which provides:

"(A) A lawyer shall not:

.    .    .    .    .    .    .    .    .    .    .    .    .

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law." (Rules of the Supreme Court, 214 Kan. lxxv.)

There was no evidence that respondent failed to perform competently or failed to act honestly in remitting the funds actually collected. The hearing panel found he did the best job of collecting the account possible under the circumstances and he was successful in renewing the account by obtaining payments thereon. He received only $13.00 in compensation for his work and this amount would hardly cover the postage and stationery utilized in the

correspondence. The problem which gave rise to the complaint was purely and simply a failure to answer all letters from the forwarding attorney.

In a proceeding for discipline of an attorney the burden is greater than in an ordinary civil action, and to sustain the burden it must be shown by clear and satisfactory evidence that a violation of a particular disciplinary rule has occurred which warrants disciplinary action. (*In re Ratner,* 194 Kan. 362, 399 P. 2d 865; *In re Phelps,* 204 Kan. 16, 17, 459 P. 2d 172, cert. den. 397 U. S. 916, 25 L. Ed. 2d 97, 90 S. Ct. 922.)

The findings and recommendations of the State Board of Law Examiners are advisory only and not binding on this court. (*In re Cox,* 164 Kan. 160, 188 P. 2d 652.) After reviewing the record on this complaint against Leo N. Johnson it is the collective conscience of this court that Leo N. Johnson should be acquitted of the complaint. In our view it has not been shown by clear and satisfactory evidence that the respondent's failure to communicate under the circumstances of this case amounted to conduct that adversely reflects on his fitness to practice law.

## II. Complaint of Mary Burke

The findings of the State Board on the complaint of Mary Burke disclose that respondent was named executor of the will of Paul Bell, who died on April 11, 1973. At Bell's death respondent prepared a petition to probate the will and secured waivers of notice from all heirs. The will was admitted to probate and respondent was appointed executor. Notice to creditors was published in a local newspaper. Claims for expenses of last illness and for funeral expenses were filed and paid. The respondent as executor secured an order from the court authorizing transfer of title to an automobile previously sold under contract. Many small accounts owing to the estate were collected by letter. The foregoing work was accomplished within 10 months after notice to creditors.

The complaint of Mary Burke was largely directed toward the respondent's failure to discuss the affairs of the estate with her and his failure to promptly close the estate. During the hearing before the panel, which occurred one year and ten months after respondent's appointment as executor, certain additional irregularities in the manner in which the estate had been handled came to light. These were in the nature of nonfeasance as distinguished from malfeasance. The respondent failed to file an inventory of the

property belonging to the estate. No appraisal had been obtained and respondent had failed to file estate and inheritance tax returns. These returns were past due and subsequent filing will require the payment of both penalty and interest, and result in a loss to the estate.

Respondent advised the hearing panel that he will pay the unnecessary expense incurred by reason of penalty and interest due on these death tax returns. This is a mitigating circumstance which we have considered in arriving at our ultimate decision.

The assets of the estate, according to respondent's own testimony, consist primarily of investments in mutual funds, certificates of deposits, savings accounts and a balance due on a contract for the sale of decedent's business entered into prior to his death. The future payments due on the contract would normally require that special arrangements be made with the probate court and the heirs to effect a closing of the estate.

The hearing panel noted other matters of nonfeasance by the respondent such as failure to give proper attention to the collection of accounts, writing his own bond as executor while acting in the capacity of an agent for a bonding company without securing prior approval from the heirs and a failure to institute ancillary proceedings in Florida to clear title to several unimproved lots of unknown value. There is an insufficient factual foundation in the record for this court to determine the extent of misfeasance, if any, in connection with the collection of accounts and the need for ancillary proceedings in Florida. We express no position with regard thereto.

The conclusion adopted by the State Board on this complaint was that there had been a violation by the respondent of two separate disciplinary rules which are as follows:

"(A) A lawyer shall not:

.    .    .    .    .    .    .    .    .    .    .    .

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law." (DR 1-102 [A] [6].)

"(A) A lawyer shall not:

.    .    .    .    .    .    .    .    .    .    .    .

"(3) Neglect a legal matter entrusted to him." (DR 6-101 [A] [3]. Rules of the Supreme Court, 214 Kan. pp. lxxv, lxxxvii.)

After reviewing the record on the complaint of Mary Burke this court finds the respondent did neglect a legal matter entrusted to him by failing to file an inventory and appraisal in the estate of Paul Bell within the time required by law (see K. S. A. 59-1201 and

59-1202), and by failing to file necessary and timely reports on federal estate tax and state inheritance tax thus incurring added expense (see 26 U. S. C. A., § 6075 [a], and K. S. A. 1972 Supp. 79-1502). Such neglect constitutes conduct adversely reflecting on his fitness to practice law in violation of the disciplinary rules.

Respondent has accepted the findings of fact entered by the State Board of Law Examiners. We find a violation of the Code of Professional Responsibility, so there remains the determination of the discipline to be administered. It has been observed by this court:

". . . [N]o punishment is provided in the Code of Professional Responsibility. Rule 207 (n) provides that recommendations of the board as to punishment may be (1) private censure, (2) public censure, (3) suspension for a definite or indefinite period, or (4) disbarment; but the nature of the punishment is not limited to these designations. The rule provides no guidelines for categorizing acts of misconduct in any one of the suggested forms of punishment. The only limitation on punishment is the collective conscience of this court. We recognize that a pattern has developed to some extent in our disciplinary cases, and that we should strive for consistency in the exercise of our judicial judgment. . . ." (*State v. Alvey,* 215 Kan. 460, 466, 524 P. 2d 747.)

Discipline by public censure has been approved in other cases where attorneys have neglected legal matters entrusted to them and have failed to communicate with their clients. (See *State v. Martindale,* 215 Kan. 667, 527 P. 2d 703; *State v. Alvey,* supra; and *In re Carson,* 205 Kan. 456, 469 P. 2d 349.)

On the complaint of Mary Burke it is considered, ordered and adjudged that Leo N. Johnson be and he is hereby publicly censured by this court. Costs of this proceeding are taxed to respondent.