Fred W. PHELPS, Sr.,
Plaintiff-Appellant,

v.

KANSAS SUPREME COURT, et al.,
Defendants-Appellees.

No. 79–2297.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 15, 1980.

Decided Oct. 5, 1981.

Rehearing Denied Nov. 19, 1981.

Charles S. Fisher, Jr., Topeka, Kan. (Fisher, Ochs & Heck, Topeka, Kan., with him on the brief), for plaintiff-appellant.

Philip A. Harley, Topeka, Kan. (Scott, Quinlan & Hect, Robert T. Stephan, Atty. Gen. of Kansas and Bruce E. Miller, Deputy Atty. Gen., Topeka, Kan., with him on the brief), for defendants-appellees.

Robert F. Bennett of Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, submitted brief of amicus curiae Kansas Bar Association.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This civil rights action was brought under 42 U.S.C. § 1983, with jurisdiction asserted under 28 U.S.C. § 1343. Plaintiff-appellant Phelps, a lawyer, was disbarred by the defendant-appellee Kansas Supreme Court. The members of that court and its disciplinary administrator were joined as defendants. Phelps claims that he was denied his constitutional right to due process. The federal district court denied plaintiff's motion for a preliminary injunction and sustained the defendants' motion to dismiss. We affirm.

By stipulation the trial court received and considered the entire record before the Kansas Supreme Court in the disbarment proceedings. *State v. Phelps*, 226 Kan. 371, 598 P.2d 180, cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731, and also the record on appeal of the Kansas state court case of *Robinson v. Brady*. The disbarment proceedings were based on the conduct of the plaintiff in *Robinson v. Brady*. The pertinent facts are detailed in the opinion of the Kansas Supreme Court, 598 P.2d 180–183, and need not be repeated.

Kansas has comprehensive procedures for the discipline of attorneys. See Rules of the Supreme Court—Discipline of Attorneys—224 Kan. LXXXI et seq., Deft.'s Exs. C & D. Complaints or reports of alleged misconduct are filed with the Disciplinary Administrator who makes recommendations to a Review Panel. If formal disciplinary action is instituted by the Administrator, a complaint is served on the respondent who has opportunity to answer. The Review Panel conducts a hearing after notice. Respondent is entitled to representation, cross-examination of witnesses, and submission of evidence. If the Review Panel recommends discipline, respondent may present exceptions which are heard by the Kansas Supreme Court. Provision is made for briefing and argument after preparation and service on respondent of a transcript of the hearing before the Review Panel. The court then imposes "such discipline as may be deemed just and proper."

The Review Panel stated the charges against plaintiff as: (1) violation of his attorney's oath; (2) dishonest conduct in violation of DR 1–102(A)(4); (3) conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5); (4) false statements in violation of DR 7–102(A)(5); and (5) signing a pleading in bad faith in violation of Kansas statute KSA 60–211. The Review Panel found violations of items (2) through (5) and recommended public censure.

On plaintiff's exceptions to the report of the Review Panel the Kansas Supreme Court said, 598 P.2d at 186:

"We have carefully and painstakingly reviewed the voluminous transcripts and exhibits and conclude there is clear and convincing evidence to support the panel's finding that respondent violated [the four items mentioned above]."

The Supreme Court also said, Id. at 187:

"Additionally, we find the entire record before us clearly supports a violation of DR 7–102(A)(1)."

The last mentioned disciplinary provision says that a lawyer shall not take action on behalf of a client "when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." After noting that plaintiff had been previously suspended from law practice, because of unprofessional conduct in 1969, see 598 P.2d 187, the court changed the penalty from that recommended by the Review Panel to that of disbarment. This action was in accord with an earlier ruling that the recommendations of the Review Panel "are advisory only and not binding on this court." *State v. Johnson*, 219 Kan. 160, 546 P.2d 1320, 1322.

Plaintiff claims that the action of the Kansas Supreme Court finding a violation of a disciplinary standard not charged in the proceedings before the Review Panel deprived him of due process because he had no notice of, or opportunity to defend against, that specific charge. In taking its action the Kansas court had before it, and considered, only the evidence adduced in support of the violations charged in the

complaint before the Review Panel. That evidence was confined to the misconduct of the plaintiff in the Robinson v. Brady litigation. The case at bar is distinguishable from *In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117. That case involved two different, distinct, and unrelated incidents of misconduct and the respondent lawyer had notice only of one. We are concerned with one continued and integrated pattern of misconduct, plaintiff's actions in the Robinson v. Brady litigation. Plaintiff had full knowledge that his actions in that litigation were the basis for the disciplinary proceedings and full opportunity to present his defense. The Kansas court concluded that the misconduct in Robinson v. Brady violated another ethical standard in addition to the standards considered by the Review Panel.

■ Plaintiff argues that the district court erred in granting the defendants' motion to dismiss. The record shows that the case was heard on its merits with stipulated evidence. The lower federal courts do not have subject matter jurisdiction to review state disbarment proceedings. *Selling v. Radford*, 243 U.S. 46, 50, 37 S.Ct. 377, 378, 61 L.Ed. 585; *Doe v. Pringle*, 10 Cir., 550 F.2d 596, 599, see also, *Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342. The United States Supreme Court reviews state disciplinary proceedings on appeal from and on certiorari to the state supreme court. See e. g. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444; *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574. Certiorari was sought and denied in this case. 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731.

■ We have recognized the difference between a particularized attack on state action affecting an individual attorney and an attack on the state's general rules and regulations pertaining to the law practice. *Younger v. Colorado State Board of Law Examiners*, 10 Cir., 625 F.2d 372, 375–376. In the case at bar plaintiff attacks the general rules and their application to him. The district court held that the general

rules were constitutional and we agree. The attack on those rules borders on the frivolous.

The question is the application of those rules to plaintiff. In effect the district court held that the rules were not unconstitutionally applied. Hence, there was no deprivation of a constitutional right and a claim could not be sustained under § 1983.

The Kansas Supreme Court could have disbarred Phelps on any one of the charges heard and considered by the Review Panel and sustained by the court. The issue narrows to whether, by finding plaintiff in violation of an ethical standard not specified in the complaint against him, the disbarment must fail because of denial of due process. On the other charges, plaintiff does not assert a due process claim. Indeed, he cannot because he had notice and full opportunity to be heard.

The record does not disclose whether plaintiff raised the due process claim on the additional charge either by way of petition for rehearing to the Kansas Supreme Court or in his petition to the Supreme Court of the United States for certiorari review. Under Kansas Disciplinary Rule 219(a) he could have, and still can, apply for reinstatement by showing that "he has rehabilitated himself *or that he is entitled to have the order of discipline vacated, terminated or modified.*" (Emphasis supplied.) Instead of doing so he sought § 1983 relief in federal court. We doubt whether § 1983 relief is available when a complainant does not exhaust the state remedy which is available to him. The United States Supreme Court has not decided this issue. See e. g. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 415 n. 5, 66 L.Ed.2d 308. We decline to decide it here because the case can be disposed of on other grounds.

The Kansas court found one statutory and three ethical standard violations. Any one of these sufficed to sustain the disbarment sanction. These violations were free from any claim of unconstitutionality. Plaintiff says that the disbarment must be enjoined because on the same evidence the court found violation of another ethical

standard, and in so doing deprived plaintiff of his due process rights. We disagree.

■ In the criminal law field, the Supreme Court has held that when several concurrent sentences are within the legal maximum and not legally deficient, a court in the exercise of its judicial discretion may decline to consider a separate charge which may not be legally supportable. See *Roviaro v. United States*, 353 U.S. 53, 59 n. 6, 77 S.Ct. 623, 627, 1 L.Ed.2d 639; and *Barnes v. United States*, 412 U.S. 837, 841, 93 S.Ct. 2357, 2360, 37 L.Ed.2d 380. The Court has applied the same principle when a trial on several counts is followed by a general sentence. That sentence may be upheld if conviction on any one of the counts is supportable. *Barenblatt v. United States*, 360 U.S. 109, 115, 79 S.Ct. 1081, 1087, 3 L.Ed.2d 1115.

*Benton v. Maryland*, 395 U.S. 784, 789–790, 89 S.Ct. 2056, 2059–2060, 23 L.Ed.2d 707, says that the concurrent sentence doctrine does not remove the elements needed to create a justiciable controversy and points out the possibility of adverse collateral effects. No decision since Benton changes or modifies its discussion of the concurrent sentence principle. See e. g. *Barnes v. United States*, supra, and *Andresen v. Maryland*, 427 U.S. 463, 469 n. 4, 96 S.Ct. 2737, 2742, 49 L.Ed.2d 627.

■ Plaintiff claims no collateral effects arising out of the Kansas court's holding that he violated an ethical standard which was not charged, and the record shows none. The evidence supporting the additional violation is the same as that supporting the other ethical violations. We assign no importance to the court's enhancement of the sanction from public censure to disbarment. That court noted plaintiff's previous suspension for unprofessional conduct and said that the seriousness of the instant case "coupled with his previous record leads this court to the conclusion that respondent

[Phelps] has little regard for the ethics of his profession." 598 P.2d at 187. We agree. On the record presented and in the exercise of our judicial discretion we decline to consider plaintiff's due process claim.

We have noted the opinion of this court in—*In the Matter of the Disciplinary Proceedings of Fred W. Phelps, Sr.*, 637 F.2d 171 (10th Cir.). Although that case involved the same lawyer as is now before us, it was concerned with his suspension in the United States District Court for the District of Kansas. The suspension was affirmed. The court commented in passing that the district court had correctly held that the action of the Kansas court in considering the additional charge violated due process. The statement was unnecessary to that decision and was supported by citation to *In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117. See 637 F.2d at 174. As we have said earlier, *Ruffalo* is not in point because it involved two distinct incidents, only one of which was charged. The instant case involves several charges growing out of the same incident, the *Robinson v. Brady* litigation. We are convinced that the obiter dictum in No. 81–1022, 637 F.2d 171, in no way inhibits our discretion to sustain the disbarment on the ethical violations which are free from constitutional objections.

Affirmed.

McKAY, Circuit Judge, dissenting:

When the Kansas Supreme Court reviewed the charges, record and recommendations of the disciplinary committee in this case, it rejected the committee's recommendation of public censure and instead ordered that plaintiff be disbarred. *State v. Phelps*, 226 Kan. 371, 598 P.2d 180 (1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980). In doing so the court added a charge not made or briefed prior to that court's opinion.[1] In addition to this

---

1. A panel of the State Board of Law Examiners recommended public censure of the appellant based only on charges other than DR7–102(A)(1). The Kansas Supreme Court sustained the findings of the Board and concluded:

"Additionally, we find the entire record before us clearly supports a violation of DR7–102(A)(1)." *State v. Phelps*, 598 P.2d at 187. Without segregating the DR7–102(A)(1) viola-

dissenter, three other judges of this court have in a prior opinion indicated their agreement with this assessment.[2]  *In the Matter of the Disciplinary Proceedings of Fred W. Phelps, Sr.*, 637 F.2d 171 (10th Cir. 1981).  I do not understand the majority to deny this unavoidable characterization of the proceedings below.  In what amounts to a kind of "harmless error" approach to the matter, the majority has minimized the importance of the uncharged and unbriefed issue in the Kansas Supreme Court decision and disregarded the recommendation of its own bar association disciplinary panel in order to impose the penalty of loss of license and livelihood.  In this I respectfully cannot join.  In fact it is the uncharged violation which seems to be the focal point of the Kansas Supreme Court decision. That court seemed compelled to rely on the uncharged violation to justify its greatly escalated penalty.

The majority's obiter dictum analogy to cumulative sentencing really does not support their opinion.  This is not a case where one illegal sentence does not increase the overall length of the sentence lawfully meted out on another count in the same trial. Rather, this case is one in which notice and an opportunity to be heard were absent as to one key element relied upon to justify a single sentence.  We have no way of knowing what the Kansas Supreme Court would have done had this issue not been superimposed on the properly charged and briefed issues.  At the very least it would do an injustice to that court's opinion to suggest that it did not consider this element very important in its decision to drastically increase the penalty over the one solemnly recommended by the bar after full hearing.

I simply do not understand the majority's attempt to distinguish *In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117

(1968).  The majority describes plaintiff's actions in the *Robinson v. Brady*[3] case as "one continued and integrated pattern of misconduct" while characterizing Ruffalo's actions as two "distinct and unrelated incidents of misconduct."  The important point is that in both cases the lawyers did not have notice of or an opportunity to be heard on one of several charges relied upon to justify disbarment.  It is not enough, as the majority states, that the lawyer have "full knowledge that his actions . . . [are] the basis for the disciplinary proceedings." What is required by the Due Process Clause is *notice of the charges* so that an adequate defense may be prepared.  The charge of which notice was lacking—DR 7–102(A)(1) —condemns conduct of a different nature than that properly charged under other sections of the Code and under state law. Plaintiff was constitutionally entitled to an opportunity to defend against that charge as well as the charges properly brought against him.

Disbarment proceedings are quasi-criminal in nature.  *In Re Ruffalo*, 390 U.S. at 551, 88 S.Ct. at 1226.  Because a lawyer's livelihood is at stake, courts often require clear and convincing evidence of misconduct.  *McCormick's Handbook of the Law of Evidence*, § 341 n. 22 (2d ed. 1972).  This elevated standard of proof reflects the magnitude of the liberty interest threatened. Because of the quasi-criminal nature of these proceedings, an analogy to the criminal law is appropriate.  A court that would affirm this case would logically also sustain a conviction for kidnap apparently committed during a bank robbery where only robbery was charged and tried.  As in *Ruffalo*, I must conclude that the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived [plaintiff] of procedural

---

tion from the other charges, the court decided to disbar rather than censure appellant.

**2.** After reviewing the same record before the Kansas Supreme Court in connection with a federal court disciplinary proceeding, a unanimous three-judge panel concluded:

The district court correctly held that the defendant had been deprived of his rights under the due process clause in accordance with *In*

*Re Ruffalo*, 390 U.S. 544 [88 S.Ct. 1222, 20 L.Ed.2d 117] (1968), when the state court found him guilty of violating DR7–102 A 1, the charge in which he had not been given notice.
*In re Phelps*, 637 F.2d 171, 174 (10th Cir. 1981).

**3.** Nos. 125695 and 125742 (Dist.Ct., Shawnee County, Kan.1976), *aff'd*, No. 48,949 (Kan.Ct. App. Feb. 17, 1978).

due process." *In re Ruffalo*, 390 U.S. at 552, 88 S.Ct. at 1226.

The only remaining question is whether an attorney disbarred in a state court proceeding may bring in federal district court a "suit in equity" under 42 U.S.C. § 1983[4] to enjoin an Order of Disbarment when that order was, in part, based on proceedings which violate the due process clause of the fourteenth amendment.[5]

The Supreme Court has said:

It is not for this Court, except within the narrow limits for review open to this Court, as recently canvassed in *Konigsberg v. California*, 353 U.S. 252 [77 S.Ct. 722, 1 L.Ed.2d 810], and *Schware v. Board of Bar Examiners*, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796], to sit in judgment on [state court] disbarments . . . .

*Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). *Theard* was a federal disbarment proceeding and did not directly review the state proceedings. *Konigsberg* and *Schware* involved petitions for certiorari from the state proceedings directly to the Supreme Court. Unfortunately, no Supreme Court decision directly deals with an original § 1983 proceeding where a violation of the type reviewed in *Konigsberg* and *Schware* is alleged. Broad language from some circuit cases suggests that certiorari to the Supreme Court is the only method of review of state disciplinary proceedings, but none explicitly prohibits a § 1983 injunctive action alleging that the rules of state disciplinary proceedings or their administration violate fundamental due process.[6]

**4.** § 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**5.** There is no claim for damages in this case, which in any event would be barred by doctrines of judicial immunity. *See Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir. 1978) (also holding that such "immunity does not extend to immunity from equitable relief"). Additionally, we are not faced with the problems raised by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), since appellant has exhausted his state appellate remedies and the state proceedings are now concluded. *See Huffmann v. Pursue, Ltd.*, 420 U.S. 592, 607–10, 95 S.Ct. 1200, 1209–1211, 43 L.Ed.2d 482 (1975); *Gipson v. New Jersey Supreme Court*, 558 F.2d 701, 704 (3rd Cir. 1977). *See also American Civil Liberties Union v. Bozardt*, 539 F.2d 340 (4th Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). We do not think that *Younger* required appellant to file a petition for rehearing with the Kansas Supreme Court, *see* Kan.Stat. § 60–2701a, Rule No. 7.06 (1976). The disciplinary proceedings are final and are no longer "pending" against petitioner so as to invoke *Younger*'s noninterference rationale.

The Supreme Court has yet to decide how principles of res judicata apply to civil rights

litigation. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 415 n. 5, 66 L.Ed.2d 308 (1980). In any event, appellant's claim cannot be barred by principles of res judicata. Appellant was unaware of his claim until *after* the state proceedings were concluded when he first learned of the DR 7–102(A)(1) charge. Appellant thus had no opportunity to present his due process claim to a state tribunal in normal appellate processes. The Supreme Court has held that principles of collateral estoppel apply to § 1983 actions: "There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court. . . ." *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980). Nonetheless, appellant's claim is not barred by principles of collateral estoppel because it has *not* been presented to or passed upon by the state courts.

**6.** *See Martinez Rivera v. Trias Monge*, 587 F.2d 539 (1st Cir. 1978); *Grossgold v. Supreme Court of Illinois*, 557 F.2d 122 (7th Cir. 1977); *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *Mayes v. Honn*, 542 F.2d 822, 824 (10th Cir. 1976) ("If the [§ 1983 challenge to a state disbarment] was a bona fide civil rights action which showed some promise of success . . . it might be that the fact that it also collaterally attacks proceedings in the state court would not be significant"); *Feldman v. State Bd. of Law Examiners*, 438 F.2d 699 (8th Cir. 1971); *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); *Jones v. Hulse*, 391 F.2d 198 (8th Cir.), *cert. denied*, 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968).

In a § 1983 challenge to Colorado's rules governing admission to that state's bar, this court recently said:

> We have held that the federal district courts may not exercise jurisdiction to review an adjudication by the state courts which is alleged to have unlawfully denied admission to a particular applicant for admission to the bar.... However, our decision in Doe [v. Pringle, 550 F.2d 596 (10th Cir. 1976), cert. denied, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977)] does recognize a distinction between a frustrated bar applicant's challenge to the denial of his particular petition and a constitutional attack on a state's general rules and regulations governing admission (550 F.2d at 599).

Younger v. Colorado State Board of Law Examiners, 625 F.2d 372, 375–76 (10th Cir. 1980). This same distinction exists between challenges to a particular disciplinary proceeding and a constitutional attack on a state's general rules and regulations governing discipline. Appellant's complaint constitutes the latter type of attack; it specifically challenges the disciplinary rules of the Kansas Supreme Court which, as applied here, allow for the disbarment of an attorney based partially on a charge which that attorney has not been notified of or allowed to respond to.

Section 1983 explicitly provides for suits in equity where a citizen has been deprived of any "rights, privileges, or immunities secured by the Constitution and laws." Absent a clear holding that § 1983 was not designed to redress a denial of due process by a state supreme court's application of its statutes, ordinances, regulations, customs, or usages, we are not at liberty to disregard the congressionally created cause of action. While it is true that a petition for certiorari provides an avenue of relief from unconstitutional state disbarment proceedings, § 1983 provides an independent basis for such actions in the federal district courts. This action is analogous to the situation which exists in criminal cases, where a party can bring a petition for certiorari directly in the Supreme Court but is not thereby precluded from bringing a separate petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[7]

The Order of Disbarment was in part based on a charge of which appellant had neither notice nor an opportunity to be heard, both of which are mandated by the fourteenth amendment. Consequently, I believe the district court erroneously dismissed this § 1983 action.[8] What the state court would have done had the charge of violation of DR 7–102(A)(1) been excluded, or had appellant been accorded notice of and an opportunity to respond to it, we do not know. The trial court should have entertained the action and entered an order declaring the challenged procedure unconstitutional and enjoining the disbarment order as it now stands infected with unconstitutional proceedings.[9] I hasten to add that I would not prohibit the Kansas Supreme

In Ginger v. Circuit Court, 372 F.2d 621 (6th Cir. 1967), the court stated that "the limits of review [by the United States Supreme Court] are violations, in the course of disbarment proceedings, of the due process or equal protection clauses of the Fourteenth Amendment, and a petition for Writ of Certiorari to the Supreme Court of the United States is the only method by which review may be had." Id. at 625. The Sixth Circuit narrowed this "holding" in Getty v. Reed, 547 F.2d 971 (6th Cir. 1977): "These cases do ... stand for the proposition that the District Court has no appellate jurisdiction as to final decisions of a state supreme court or, a fortiori, the United States Supreme Court. However, the instant complaints are original claims which allege state law violation of the Federal Constitution." Id. at 974 (emphasis added).

7. Cf. Huffmann v. Pursue, Ltd., 420 U.S. 592, 605–07, 95 S.Ct. 1200, 1208–1209, 43 L.Ed.2d 482 (1975). None of the Supreme Court's concerns about res judicata and collateral estoppel, id. at 606 n. 18, 95 S.Ct. at 1209, are present here. See note 5 supra.

8. Appellant raises other challenges to the state proceedings, but, like the majority, I find no infirmity cognizable under § 1983 in the challenges raised.

9. Such an injunction is not barred by the Anti-Injunction Act, 28 U.S.C. § 2283. See Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

Court from taking such constitutional proceedings and actions as it subsequently may determine are proper in this case.

I would reverse and remand for the entry of an appropriate order consistent with these views.