**In re Anonymous No. 48 D.B. 80**

Disciplinary Board Docket no. 48 D.B. 80.

McDONNELL, *Member,* April 14, 1982 — Petition for discipline was filed in this matter on September 8, 1980. The petition alleges that respondent conspired in 1972 and 1973 to violate sections of the Pennsylvania Election Code of June 3, 1937, P.L. 1333, 25 P.S. §3224 and §3225 by receiving about $16,000 from a client, which was a farmer's cooperative, and then using this money to make political contributions on behalf of the client.

Petitioner's witnesses, who were officers of the cooperative, testified that the money was given to respondent without any restrictions and without requiring any accounting, and that they, petitioner's witnesses, did not believe what they were doing was in any way illegal.

Respondent testified that he believed the transaction to be legal in that he could do whatever he wished with the money, and that he, in fact, reported the monies given to him by the client as income on his 1972 and 1973 personal income tax returns. The hearing committee found that no criminal conspiracy to violate the election laws took place and that none of the disciplinary rules alleged in the petition of the Disciplinary Counsel were in fact violated. The hearing committee did find that respondent violated D.R. 9-101 which pertains to "avoiding even the appearance of impro-

priety." The committee recommended that respondent be given a private reprimand. ▪

Petitioner filed exceptions to the committee's report arguing that the conspiracy to violate the election laws had been committed and that respondent should be suspended for at least three years.

Oral argument was heard by a panel of the board. During that argument, it was brought out that D.R. 9-101, which the hearing committee found to be violated, was not charged in the petition. Disciplinary Counsel pointed out that the hearing committee had the power to find a disciplinary rule violation based upon the evidence presented in the case even though not charged in the petition, citing the case for Phelps v. Kansas Supreme Court, 662 F. 2d 649 (10th Cir. 1981). However, Disciplinary Counsel argued that the disciplinary rules alleged in the petition were, in fact, violated.

The board, after reviewing the record, agreed with the hearing committee that respondent had violated D.R. 9-101 "avoiding even the appearance of impropriety" and, more specifically, section C which reads: "a lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official." In this case, respondent did suggest a means for influencing public officials through monies given to him by his client. For the same reason, the board also concluded that respondent had also violated D.R. 7-101(A)(1) which reads "A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law." This rule was among those charged in the petition.

The record shows that respondent did advise his client of a plan for making political contributions to candidates for public office. If respondent had acted more prudently, he would have advised his client of other lawful means that it could have used to allow its officers to make any contributions that they wish to make to any political candidate. Therefore, the board finds that respondent has violated D.R. 7-101(A)(1) and D.R. 9-101(C). Since the board finds that no conspiracy to violate the election code was proved, the other violations charged are dismissed.

As for the discipline to be imposed, the board agrees with the hearing committee that respondent should receive a private reprimand. The board comes to this conclusion because respondent has had no other disciplinary infractions during his more that 20 years of practicing law in Pennsylvania.

## ORDER

And now, March 19, 1981, respondent is found to have violated D.R. 7-101(A)(1) and D.R. 9-101 of the Code of Professional Responsibility and the recommendation of hearing committee [   ] dated January 19, 1982 is accepted; and it is ordered and decreed, that the said [respondent] of [   ] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement, at the next session of this board.

## REPORT OF HEARING COMMITTEE

### A.  History of the Proceedings

The petition filed by the Office of Disciplinary

Counsel charged that respondent proposed to his client, [a farmer's cooperative] (hereinafter referred to as X) that it would be in X's interest to become more politically active in the [ ] area.

It is charged that respondent advised [X] that contributions could be made by deposits in a special disbursement account entitled "[respondent], Disbursement Account."

It is also charged that respondent told [X] that this procedure was legal.

The petition alleges that those actions constituted a conspiracy to violate sections 1604 and 1605 of the Election Code of 1937.

The petition concludes by charging that such actions were violations of D.R. 1-102(A)(3), 1-102(A)(4) 1-102(A)(6), 7-101(A)(1), 7-102(A)(7) and 7-102(A)(8).

The answer of respondent admitted the receipt of checks but denied that the deposit of such checks into a disbursement account and the issuance of his own checks was the carrying out of a conspiracy to violate the election code.

Hearings were held by this committee on February 11 and March 27, 1981.

## B. Summation of Testimony

Three witnesses testified in regard to the payments from [X], [A, B and C].

There is no doubt from the testimony that the money was given to respondent by [X] and there is also no doubt that he did spend some of it for political purposes. But it may be found that the money was given to him *for that purpose.*

The gist of the testimony by [A] and respondent was that the checks were given to respondent without any instructions and no accounting was de-

manded or even requested from respondent concerning the distribution of the money.

An additional fact to be considered is that respondent paid Federal income taxes on the funds received from [X].

Was this an elaborate scheme or conspiracy to violate the statute while giving the appearance of complying with it? Or was it in fact no violation at all?

Respondent did testify on page 156 and 157: "I consulted both sections and in my reading of both sections, I made the judgment that as long as the funds belonged to me, were my property and I paid for them, reading 3224 and 25 together, and fairly, that there was no illegal act on my part."

Taking all the above into consideration, do those facts constitute a conspiracy to violate the statute?

A conspiracy is an agreement by two or more persons to commit an unlawful act or to commit a lawful act in an unlawful manner. One of the key elements in this offense is the agreement by the parties (more than one) to commit an act which they know or believe to be illegal.

I cannot recall any testimony in which either [A] or [B] admitted that they knew or even thought the giving of the money was illegal or in which they said respondent had told them it was illegal.

If respondent really believed that he was not in violation of the statute and so informed the others, do we have any statutory violation?

In his analysis of this particular section, respondent may have reached an erroneous conclusion. Perhaps other lawyers would have come to a different conclusion. But a mistake in judgment is not such an act that renders respondent subject to discipline or criminal responsibility.

Certainly neither [A] nor [B] could have partici-

pated in a conspiracy to perform an illegal act if the only advice they had was from respondent, and such advice was that the processing of funds in this manner was not a violation of the election code.

[A] was President of [X] from 1969 to 1974. His recollection was that at a meeting, respondent thought [X] should become more politically active in the City of [    ]. To that end, an account was to be set up in respondent's name, into which [X] could deposit funds. Then respondent could draw checks for various political purposes. These contributions were to be at the discretion of respondent both as to amounts and recipients.

It was also [A's] recollection that respondent would not be called upon for an accounting of his expenditures.

[B] testified that he was controller of [X]. He said it was decided that contributions were to be made in the [    ] area through respondent. As far as he remembered, there was no discussion of legality or illegality nor of accounting for the money received.

[C] was retained by [X] as a public relations officer during 1972 and 1973. He didn't believe that he was violating the law.

Respondent's testimony was that [A] was going to send him money that would allow him to take part in a whole range of activities and that it would be "in his sole discretion how to use the fund." Respondent said that it would be considered his money and that he paid the Federal income tax on it.

Respondent stated that the money belonged to him and therefore his expenditures for political purposes were not violations of the election code which prohibited a person making contributions for primary or election expenses in other than his own name.

## C. Discussion

The question to be considered is whether respondent's receiving monies from [X] in his own bank account and disbursing it in many instances to candidates and for other political purposes was a violation of the election code and also a violation of the Disciplinary Rules set forth in the petition for discipline.

Section 1604(a) of the Election Code, 25 P.S. §3224 states:

"(a) "It shall be unlawful for any person to make any contribution for primary or election expenses with funds designated or given to him for the purpose by any other person, firm or corporation. Each person making a contribution for primary or election expenses shall do so only in his own name."

The unlawful act is the contribution for primary or election expenses with funds designated for that purpose by some other person or corporation.

Even in the absence of a conspiracy to violate the election code, there could be conduct falling short of criminal which would subject respondent to disciplinary punishment by this board.

Paragraph 15 of the complaint sets forth the various disciplinary rules which counsel for the board believes that respondent violated by his conduct.

A careful consideration of these alleged violations leads us to conclude that none of the alleged violations have occurred.

The conduct of respondent does not involve moral turpitude Rule 1-102(A)(3) nor does it involve dishonesty, fraud, deceit or misrepresentation. Rule 1-102(A)(4). The use of such money by respondent does not reflect upon his fitness to practice law. Rule 1-102(A)(6). Finally, respondent has not failed to seek lawful objectives for his client through

means which respondent fully believed was legal and proper, Rule 7-102(A)(7).

Even if the undersigned, upon analyzing all the facts, would, in an exercise of super caution, believe that he was not entitled to receive and disperse the monies in the manner they were received and dispersed by respondent, such a conclusion cannot form the basis for censuring respondent. He may have acted imprudently. It may be that he did not think the matter through sufficiently before acting. But he did not engage in a conspiracy to violate the election code nor did he violate any of the disciplinary rules cited by board counsel in the petitions for discipline.

At the very most, respondent could be considered guilty of D.R. 9-101 which is entitled: "Avoiding Even the Appearance of Impropriety."

His choice of the use of a disbursement fund from which political contributions could be made by him, in his sole discretion while technically proper could give the impression to others that he was violating the spirit if not the letter of the election code.

In the opinion of this hearing committee, it would be proper to subject respondent to a private reprimand.